**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

Civil Action No. 17-cv-02312-MSK-SKC

**BRANSON GARIFE,**

    Plaintiff,

v.

**ROBERT SCHUSTER,
ROBERT GRAFNER, and
KEVIN MCCANN,**

    Defendants.

_____

**OPINION AND ORDER DENYING
MOTION FOR PARTIAL SUMMARY JUDGMENT**
_____

**THIS MATTER** comes before the Court pursuant to Defendants Robert Schuster ("Officer Schuster"), Robert Grafner ("Officer Grafner"), and Kevin McCann's ("Officer McCann") Motion for Partial Summary Judgment **(# 45)**, Plaintiff Branson Garife's ("Mr. Garife") response **(# 48)**, and the Officers' reply **(# 50)**. For the reasons that follow, the motion is granted in part and denied in part.

### I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. FACTS

The Court assumes the reader's familiarity with the claims and underlying proceedings in this case. The facts,[1] as set forth in the briefing, are supported by dash cam video recordings (**# 47**), the Officers' affidavits (**# 45-1-4**), Officer Schuster's Statement in Support of Warrantless Arrest (**# 48-2**), and Officer Grafner's Case Narrative (**# 48-3**).

On May 16, 2016 at approximately 11:30 p.m., Officer Grafner, a Town of Castle Rock police officer, was driving his patrol car when he noticed a "suspicious" vehicle parked outside a liquor store. (**# 45-1 at 1**). Officer Grafner observed a man leaning into the window of the driver's side of the vehicle, which was occupied by a male driver and three female passengers. Officer Grafner initially thought the vehicle occupants might be underage, and he suspected that the man might be buying alcohol for them at the liquor store. (**# 45-1 at 1**). Officer Grafner parked his patrol car. (**# 45-1 at 2**). While not entirely clear from the evidence, it appears the man then entered the liquor store. Officer Grafner walked up to the vehicle where he saw that one of the passengers had an open Corona beer in her hand while another passenger had a closed Budweiser Limearita in her lap. (**# 45-1 at 2**). Officer Grafner asked the driver and passengers their ages, and they all confirmed they were under 21 years of age. (**# 45-1 at 2**). Officer Grafner, concerned with locating the source of the alcohol and the reason the minors were parked outside a liquor store, called for additional officers to respond. (**# 45-1 at 2**). Officers Schuster and McCann responded at some point thereafter. (**# 45-1 at 2; # 45-2 at 1; # 45-3 at 2**).

---

[1] The Court recounts the facts in the light most favorable to Mr. Garife, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). To the extent there are factual disputes, the Court notes them in the discussion.

Officer Grafner saw the same man (who had previously been leaning against the vehicle) exit the liquor store holding a bottle of vodka. **(# 45-1 at 2)**. The man approached the vehicle and attempted the enter the passenger side. **(# 45-1 at 2)**. For safety reasons and because Officer Grafner considered the vehicle a crime scene, he directed the man to the front of the vehicle to sit on the sidewalk against the wall of the liquor store. **(# 45-1 at 2)**. Officer Grafner informed the man that the vehicle's occupants were minors and in possession of alcohol. **(# 45-1 at 3)**. At some point, the Officers looked at the man's passport and identified him as Branson Garife, age 21. **(# 45-1 at 3; # 45-2 at 2)**. Both Mr. Garife and one of the passengers told Officer Grafner that Mr. Garife *had not* provided the alcohol found in the vehicle. **(# 45-1 at 3)**.

Officer Grafner ordered the underage occupants to exit the vehicle and sit on the sidewalk about ten feet away from Mr. Garife, and he and Officer Schuster began to search the vehicle. **(#45-1 at 3; # 45-2 at 2; #45-3 at 2)**. Officer Grafner separated Mr. Garife from the others to prevent any communications which might compromise the investigation. **(# 48-3)**. Officers Grafner and Schuster found an open Corona bottle and several additional Limearita cans in the back seat. Officer Schuster also found marijuana paraphernalia. **(# 45-1 at 3; # 45-2 at 2; # 45-3 at 2)**.

During the search, Officers Schuster and McCann monitored the detained individuals sitting on the sidewalk. **(# 45-1 at 3; # 45-2 at 2, # 45-3 at 2)**. Mr. Garife attempted to stand up and move closer to the driver and passengers. Officer Schuster directed him to sit back down. **(#45-1 at 3; # 45-2 at 2; # 45-3 at 2)**. Mr. Garife stood up again, walked over to where the driver was sitting and sat down. **(# 45-1 at 3, # 45-2 at 3; # 45-3 at 2)**. Officer Schuster directed Mr. Garife to immediately return to where he was originally seated. When Mr. Garife refused to comply, the Officers arrested him for Obstructing a Peace Officer by taking him to the

3

ground, handcuffing, and placing him in a patrol vehicle.[2]  (**# 45-1 at 4; # 45-2 at 3; # 45-3 at 2-3**).

Officer Grafner cited the driver and the passengers for violation of Colo. Rev. Stat. § 18-13-22, being minors in possession of alcohol and/or marijuana paraphernalia.  Mr. Garife was charged with violation of Colo. Rev. Stat. § 18-8-104, Obstructing a Peace Officer and Colo. Rev. Stat. § 18-8-103, Resisting Arrest.  (**# 45-2 at 3**).

On April 24, 2018, the Court issued an Order on the Officers' motion to dismiss, dismissing: all claims asserted against the Town of Castle Rock, Colorado; Claim 9 against Officer McCann for a Fourth Amendment violation of failure to intervene in Mr. Garife's arrest; and Claim 12 against Officer McCann for a Fourth Amendment violation in failing to report use of excessive force in Mr. Garife's arrest.  (**# 36**).  Accordingly, the following claims remain[3]: (1) Fourth Amendment illegal stop asserted against Officer Schuster and Officer Grafner; (2) Fourth Amendment unlawful arrest asserted against Officer Schuster, Officer Grafner, and Officer McCann; and (3) Fourth Amendment excessive force asserted against Officer Grafner and Officer Schuster.

Of these claims only the illegal stop and unlawful arrest are at issue in this motion. The Officers move for partial summary judgment on Mr. Garife's Fourth Amendment claims for lack of reasonable suspicion and lack of probable cause and assert the doctrine of qualified immunity.

---

[2] The Court omits the facts related to the force incident as Mr. Garife's claims for excessive force are not at issue in this Opinion and will proceed to trial.

[3] In his response, Mr. Garife agrees to the entry of summary judgment as to his state law malicious prosecution claims.  (**# 48 at 1**).  Accordingly, judgment is entered in favor of the Officers as to Claims 4, 8, and 11.  (**# 45 at 4**).

In response, Mr. Garife contends that there are disputed issues of material fact precluding entry summary judgment.

### III. LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine

5

dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV. DISCUSSION

Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). Because of the underlying purposes of qualified immunity, the Court treats qualified-immunity questions differently from other questions on summary judgment. *See Thomas v. Durastanti*, 607 F.3d 655, 662 (10th Cir. 2010). After a defendant asserts qualified immunity, the burden shifts to the plaintiff, who must: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct breached the constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these questions in whichever order is best suited to the case. If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). However, if the plaintiff establishes the violation of a clearly established right,

6

it becomes the defendant's burden to prove there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the question of whether the evidence shows a violation of a constitutional right is indistinguishable from the inquiry that the Court would make in determining whether the plaintiff has come forward with sufficient evidence to establish a *prima facie* claim in accordance with Rule 56. The plaintiff must produce sufficient evidence, which if true, would make a *prima facie* showing of a cognizable claim. The Court considers the evidence in the light most favorable to the plaintiff and assesses whether it is sufficient to demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The "clearly established" inquiry focuses on whether the contours of the constitutional right were so well-settled in the context of the particular circumstances, that a "reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). To satisfy this prong, the burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority). It is not necessary for the plaintiff to point to a case with identical facts, but he must identify some authority that considers the issue "not as a broad general proposition," but in a "particularized" sense — for example, it is not sufficient to ask whether it is "clearly established" that the Fourth Amendment prohibits the use of excessive force in effecting an arrest; rather, the court examines whether that constitutional principle has

previously been found to prohibit particular conduct. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

With these considerations in mind, the Court turns to Mr. Garife's claims that the Officers lacked both reasonable suspicion for the initial stop and probable cause for the arrest for obstructing a peace officer. The Court begins with a determination of whether evidence sufficient to establish *prima facie* claims has been shown and then proceeds to whether that right was clearly established.

### A. Claim of a Fourth Amendment Illegal Stop Asserted Against Officers Grafner and Schuster

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures … shall not be violated." U.S. Const. Amend. IV. A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's "freedom of movement through means intentionally applied." *See Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007); *Dist. of Columbia v. Wesby,* 138 S.Ct. 577, 585-86 (2018).

**Constitutional Violation**

To establish a claim for an illegal stop, Mr. Garife must prove that the initial contact was not supported by reasonable suspicion. Contact that is supported by reasonable suspicion of criminal activity does not violate the Fourth Amendment. In order to determine whether the Officers had reasonable suspicion, "[t]he court views the totality of the circumstances to see whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing." *Cortez v. McCauley*, 478 F.3d 1108, 1123 (10th Cir. 2007) (quotation omitted). "While reasonable suspicion is a less demanding standard than probable cause and requires a

8

showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop. The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (quotations and citations omitted).

The Officers contend they had reasonable suspicion to detain Mr. Garife for providing alcohol to minors in violation of Colorado law. Colo. Rev. Stat. § 44-3-901(1)(b)(I) (formerly known as § 12-47-901) makes it unlawful for any person to "sell, serve, give away, dispose of, exchange, or deliver or permit the sale, serving, giving, or procuring of any alcohol beverage to or for any person under the age of twenty-one years." *Id.; see Full Moon Saloon, Inc. v. City of Loveland*, 111 P.3d 568, 570 (Colo. App. 2006).

Here, the stop occurred when Mr. Garife was told to move to the front of the car and sit on the curb. At that juncture, Officer Grafner had observed a vehicle parked in front of a liquor store occupied with individuals he "thought" were underage. (**# 45-1 at 1**). Officer Grafner observed Mr. Garife lean into the driver's side window and talk to the occupants, and he "suspected" Mr. Garife "may be buying alcohol" for the occupants at the liquor store. (**# 45-1 at 1**). Officer Grafner confirmed the occupants of the vehicle were indeed underage and 2 had alcohol.[4] (**# 45-1 at 2**). Officer saw Mr. Garife go into exit from the liquor store with a bottle of vodka and attempt to enter the passenger's side of the vehicle.

Although the evidence shows that the driver and passengers were under the age of 21, satisfying the age element of § 44-3-901(1)(b)(I), there is little to no evidence that 1) established

---

[4] Under Colorado law, it is unlawful for any person under 21 years of age to possess or consume alcohol or marijuana. Colo. Rev. Stat. § 18-13-122.

Mr. Garife's age or that 2) he was giving or procuring alcohol for the minors in the car. Officer Grafner never saw Mr. Garife give the driver or passengers any alcohol and never heard Mr. Garife agree to get alcohol for them. Thus, what the Officers knew at the time that Mr. Garife was detained, was that he bought liquor (presumptively legally) and had a conversation with and intended to ride in a car with minors who possessed liquor.[5]

The Officers cite *United States v. Ortiz*, 63 F.3d 952, 954 (10th Cir. 1995) in support of their contention that they had reasonable suspicion to detain Mr. Garife, but the facts in *Ortiz* are distinguishable from those here. In *Ortiz*, officers observed an underage girl holding a can of beer while leaning inside a vehicle window. As officers arrived, the girl fled the scene without the beer in her hand, and officers observed a beer in the driver's lap and another beer sitting next to the passenger. *Id.* The issue was the sufficiency of the Officers' assumption that the girl was a minor in possession of alcohol.

Officer Grafner supposed that Mr. Garife was buying alcohol for minors in the car, but other than observing Mr. Garife with alcohol and in proximity to the occupants of the car, Officer Grafner had no factual basis for believing that the alcohol that the minors possessed had been supplied by Mr. Garife nor that the bottle of vodka that Mr. Garife was for the occupants of the car. Put differently, Mr. Garife legally purchased the vodka, legally talked to the driver and passengers in the car and legally attempted to get into the car with them. There is no evidence suggesting that Mr. Garife attempted to give the vodka to the driver or the passengers. Thus, construing the evidence most favorably to Mr. Garife, Officer Grafner had an "unparticularized

---

[5] Later, Mr. Garife and one of the occupants of the car stated that Mr. Garife had not supplied them with the liquor they possessed (Coronoa and Limerita). (**# 45-1 at 3**).

suspicion or hunch" about his criminal activity" *Wardlow*, 528 U.S. at 123,. Whether this hunch rises to the level of reasonable suspicion is ultimately a factual issue for a jury to decide.

Accordingly, the Court finds that evidence, construed most favorably to Mr. Garife, is sufficient to show that neither Officer Grafner nor Officer Schuster had a particularized and objective basis for suspecting Mr. Garife was engaged in criminal wrongdoing sufficient to justify a constitutional stop.[6]

**Clearly Established Law**

Mindful that the law must be clearly established in a *particularized* sense, *see Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015), the Court looks to the specific conduct for which the plaintiff has established his *prima facie* claims. However, even in novel factual circumstances, "officials can still be on notice that their conduct violates established law." *Cortez,* 478 F.3d at 1114–15. Here, viewing the facts in the light most favorable to Mr. Garife, the Court notes he was observed to be conversing with individuals who were sitting in a vehicle parked outside a liquor store. The individuals were underage and in possession of alcohol in violation of Colorado law. Mr. Garife then lawfully purchased a bottle of alcohol and attempted to enter the passenger's side of the vehicle. Mr. Garife was detained and directed to sit on the sidewalk.

The law was clearly established that people cannot be detained against their will when officers lack reasonable suspicion that they committed or are going to commit a crime. *Romero*

---

[6] While Officer Schuster argues he was not present during Mr. Garife's initial detention, the Court finds genuine issues of fact as to this contention. Officer Schuster's statements indicate he was present at the scene at approximately 11:30 p.m. and that he and the other officers "instructed Branson Garife to sit on the sidewalk and not move." **(# 48-2)**. Thus, a reasonable juror could find that Officer Schuster was present and personally participated in the initial investigatory detention.

*v. Story*, 672 F.3d 889, 888 (10th Cir. 2012) ("A citizen has the constitutional right to walk away from a law enforcement officer who lacks ... reasonable suspicion to detain or seize him or her."). Thus, the particularized question is thus whether officers have an objectively reasonable articulable suspicion to detain someone (to investigate a potential crime) who is observed to be interacting with others who are suspected of criminal activity.

Mr. Garife proffers several United States Supreme Court cases and a Tenth Circuit case that indicate it was unreasonable to do so. *See Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (holding that "[n]othing resembling probable cause existed" when an officer merely observed an individual talking to a number of known narcotics addicts, did not know the nature of the conversations, and saw nothing pass between them; the inference that persons who talk to addicts are engaged in drug trafficking "is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's security."); *Ybarra v. Illinois*, 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (holding that "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person."); *Lundstrom*, 616 F.3d at 1120 (confirming that "[f]or an investigative detention to be valid, an officer must have had objectively reasonable articulable suspicion that a detainee committed or is about to commit a crime.") (quotations and citations omitted).

The Court finds that the law is clearly established that there must be some action by Mr. Garife to suggest that he was supplying liquor to minors. Conversation and physical proximity are not enough. Thus, construing the facts most favorably to Mr. Garife, the Officers are not entitled to the protection of qualified immunity on Mr. Garife's illegal stop claim.

**B. Claim of Fourth Amendment Unlawful Arrest Against Officers Grafner, Schuster, and McCann[7]**

A police officer violates an individual's clearly established Fourth Amendment right to be free from unreasonable seizure if the officer makes a warrantless arrest without probable cause that a crime had been committed. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *District of Columbia v. Wesby*, 138 S.Ct. 577, 586, 199 L.Ed.2d 453 (2018).

**Constitutional Violation**

To establish a claim for an unlawful arrest, Mr. Garife must come forward with evidence that establishes at the time of his arrest, the arresting officers lacked probable cause. *Murphy v. Gardner*, 413 F. Supp. 2d 1156, 1164 (D.Colo. 2006). "To determine whether an officer had probable cause to arrest an individual, [courts] examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quotations and citations omitted). Probable cause exists where, under the totality of the circumstances, the officer had "a reasonable ground for belief of guilt" that is "particularized with respect to the person to be searched or seized." *Id.* The "probable cause" standard is incapable of precise definition or quantification because it deals with probabilities and depends upon the totality of the circumstances. *Id.* Generally, probable cause for an arrest exists when the "facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in

---

[7] Mr. Garife was arrested on two charges: (1) resisting arrest and (2) obstructing a peace officer. The Officers only seek summary judgment as to the arrest for obstructing a peace officer. (**# 45 at 11**). Thus, this Opinion will not address Mr. Garife's claim that the Officers arrested him for resisting arrest without probable cause, and it proceeds to trial.

the belief that an offense has been or is being committed." *Mink v. Knox*, 613 F.3d 995, 2010 WL 2802729 (10th Cir., July 10, 2010) (citing *Bowling v. Rector*, 584 F.3d 956, 969 (10th Cir. 2009)). This standard makes clear that, in assessing whether the Officers had probable cause to arrest Mr. Garife, the Court must examine the facts as they appeared to the Officers at the time the decision to arrest was made.

The arrest occurred when Mr. Garife was taken to the ground, physically restrained, handcuffed and placed in the patrol car. The Officers assert they had probable cause to arrest Mr. Garife for Obstructing a Peace Officer, Colo. Rev. Stat. § 18–8–104(1)(a) – when Mr. Garife went to sit by the occupants of the car and refused to return to spot he was directed to some 10 feet away.

The crime of obstructing a peace officer occurs when "[a] person ... by using or threatening to use violence, force, physical interference, or an obstacle … knowingly obstructs, impairs, or hinders the enforcement of the penal law or the preservation of the peace by a peace officer, acting under color of his or her official authority[.]" Colo. Rev. Stat. § 18–8–104(1)(a). From this record, the Court finds genuine disputes of material fact as to whether the Officers had probable cause to arrest Mr. Garife for obstructing or interfering with their investigation.

It is somewhat unclear what interference with the investigation the Officers believed occurred or was likely to occur when Mr. Garife refused to comply with Officer Shuster's order to return to the place on the sidewalk where he had been directed to sit. There were three officers present at the scene; Officers Grafner and Schuster searched the vehicle; Officer McCann (assisted by Officer Schuster) monitored Mr. Garife and the others while they sat on the sidewalk.

14

There is no suggestion that that Mr. Garife's location on the sidewalk impacted the search of the vehicle. To the extent that Mr. Garife was separated from the occupants of the car in order to prevent them from conversing with each other, there is no evidence that they were told not to talk to each other and that they did so. It is not clear how Officer McCann was unable to monitor and prevent conversation between Mr. Garife and the occupants of the car. There is no evidence that Mr.Garife or any of the occupants of the car had weapons or were likely to flee.

Similarly, it is unclear how Mr. Garife's refusal to retake the position on the sidewalk where he had been ordered to sit would constitute the threat or use of violence or force. There was no apparent threat to use force and Mr. Garife did not do so – he simply moved to sit near the occupants of the car and refused to return to the spot assigned to him.

Finally, there is no evidence that shows that Mr. Garife's purpose was to interfere with or obstruct the investigation being conducted. It is clear from the statements of the Officers that they considered the occupants of the vehicle to be Mr. Garife's "victims" and told him so, but the evidence does not show that Mr. Garife's purpose is moving to sit near them was to influence statements that they might give, to intimidate them or to otherwise interfere with the investigation.

To be fair, Mr. Garife's conduct violated the directives given by Officer Schuster, but at the time Mr. Garife was arrested, the evidence construed most favorable to him does not show that the Officers had probable cause to believe that he was or intended to Obstruct a Peace Officer as defined by Colorado law. Thus, the Court finds that Mr. Garife he has put forth sufficient evidence to make a *prima facie* showing of an unconstitutional arrest claim.

**Clearly Established Law**

The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. *See Keylon v. City of Albuquerque*, 535 F.3d 1210, 1216 (10th Cir. 2008). However, here, the more specific question is whether officers have probable cause to arrest someone for obstructing an investigation by merely standing up and moving a few feet.

Although Mr. Garife proffered no Tenth Circuit authority specifically addressing this factual scenario, he provided a Colorado Supreme Court case, *Dempsey v. People*, 117 P.3d 800, 810-11 (Colo. 2005), which has been cited by the Tenth Circuit. *See Kaufman v. Higgs*, 697 F.3d 1297, 1302 (10th Cir. 2012) (looking to Colorado Supreme Court decisions—specifically *Dempsey*— when interpreting Colorado's criminal obstruction statute in a qualified immunity context). In *Dempsey*, the Colorado Supreme Court held that "although mere verbal opposition alone may not suffice, a combination of statements and acts by the defendant, including threats of physical interference or imposition of an obstacle can form the crime of obstruction." *Dempsey*, 117 P.3d at 811. Here, Mr. Garife made no statements or verbally opposed the Officers. He simply stood up, moved a few feet, and sat back down next to the driver. There is no evidence that this movement interfered with or obstructed the search of the vehicle. Under these circumstances, the law was clearly established that no crime of Obstructing a Police Officer had occurred.

For the foregoing reasons, the Court finds that a *prima facie* showing of a constitutional violation has been made and that based on such facts, the law was clearly established. Under these circumstances, the Officers are not entitled to qualified immunity.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Partial Summary Judgment **(# 45)** is **DENIED**. A trial is required. The parties shall jointly contact chambers within 14 days of this order to schedule the final pretrial conference.

Dated this 30th day of July, 2019.

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
Senior United States District Judge